# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MAURICE L. MILES, JR., <br><br> *Plaintiff,* <br><br> vs. <br><br> DEPUTY CONRAD, in his official capacity with Reno County Sheriff's Department; DEPUTY SWONGER, in his official capacity with Reno County Sheriff's Department; DEPUTY MONDRAGON, in his official capacity with Reno County Sheriff's Department; and DEPUTY CARDER, in his official capacity with Reno County Sheriff's Department, <br><br> *Defendants.* | Case No. 16-CV-3152-EFM-KGG |

## MEMORANDUM AND ORDER

This case arises out of an assault that allegedly took place in the Reno County Jail. Plaintiff Maurice Miles, Jr., alleges that Defendants violated his Eighth Amendment rights against cruel and unusual punishment by failing to provide him protection from another inmate. This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum in Support (Doc. 62). For the reasons explained below, the Court grants in part and denies in part Defendants' Motion.

## I. Factual and Procedural Background

This case arose after another inmate at the Reno County Jail assaulted Plaintiff. On July 13, 2016, Plaintiff, proceeding pro se, filed the current lawsuit against several individuals employed with the Reno County Sheriff's Department. The Court issued a notice of deficiency to Plaintiff and Plaintiff submitted a new Complaint on July 29, 2016, which he supplemented on August 11, 2016. The case was dismissed for failure to exhaust administrative remedies, but reversed on appeal and subsequently reassigned to this Judge. After reassignment, Plaintiff filed an Amended Complaint (Doc. 36), as well as a supplement to his Amended Complaint (Doc. 60). The matter comes before the Court on Defendants' Motion to Dismiss. The facts recited in this section come from Plaintiff's Amended Complaint and supplement thereto,[1] and are viewed in the light most favorable to Plaintiff.

Plaintiff alleges that officers of the Reno County Jail refused to protect him from a fight that occurred in 2016. Another inmate, Robert Salabedra, allegedly slammed Plaintiff's back, neck, and head against the floor several times, resulting in Plaintiff losing consciousness at least three times and the inside of Plaintiff's mouth splitting open. After the fight, Plaintiff was placed in segregation and was refused any medical assistance even though he told "them" many times about his medical issues. Plaintiff continues to suffer from neck and head pain, as well as experience dizzy spells, "blacking out," and short-term memory loss.

Plaintiff alleges that "each and every Defendant . . . had been forewarned numerous times that [Plaintiff] needed help and that [Plaintiff] was in danger of being fisacly [sic] harmed," and each Defendant refused to help Plaintiff. Plaintiff does not identify the content of his

---

[1] The Court will consider these documents together as comprising Plaintiff's "Amended Complaint."

warnings/requests to the individual Defendants, but states that his requests for help are recorded on the Turnkey reports and grievances. Plaintiff's supplement to his Amended Complaint identifies the following facts as showing how he was in risk of harm:

a) Salabedra was disrespectful toward Plaintiff, called him out by name, and treated him like a child.

b) Salabedra was constantly stealing from Plaintiff and other inmates, and if inmates spoke out about the stealing, Salabedra would threaten to fight them or tell them "to check out of the pod if they didn't like it."

c) Salabedra told Plaintiff that if he got up to use the bathroom during the night and woke up Salabedra, that Salabedra would "put his hands on [Plaintiff]." This caused Plaintiff to hold his bathroom breaks all through the night to avoid waking Salabedra.

d) On the night before the alleged assault, all of the inmates in the pod drafted and signed a petition to have Salabedra moved out of the pod and gave the petition to Deputy Conrad.[2] The petition included all of the details involving Plaintiff and clearly stated that if Salabedra was not moved out of the pod that a fight of some sort would surely take place the next day. At 5:00 a.m. the following morning, Plaintiff noticed that Salabedra was still in the pod and made another request that he be moved in the turnkey system. Within an hour of this additional request, Plaintiff was assaulted by Salabedra. After the assault, everyone was "put into the hole."

e) After the alleged assault, Salabedra was placed back into a pod with Plaintiff twice. Plaintiff threatened Captain Shawn McClay with another lawsuit if they did not separate the two and told "them" that Plaintiff was miserable with Salabedra in the pod with him and that Plaintiff constantly stayed in his cell in fear of retaliation. On August 8, 2016, Officer Wonkie answered Plaintiff's grievance regarding Salabedra being placed back in the pod with Plaintiff, and asked "when and where? I need individual [sic] dates."

---

[2] In his response brief, Plaintiff asserts that the reason he filed suit against Defendant Conrad is "because the note that had all the signatures on it (in paper form) was handed dire[c]tly to him. He read it, and then refused to help." Although this allegation appears in the response brief and not the Amended Complaint, the Court will consider this allegation as it is consistent with and merely amplifies the allegations contained in the Amended Complaint. *See Peoples v. Wichita State Univ.*, 2018 WL 5013488, at *2 (D. Kan. 2018) (collecting cases where courts have considered additional facts contained in pro se parties' response briefs to motions to dismiss). Even without considering the allegation, the reasonable inference to be drawn from the Amended Complaint is that Defendant Conrad read the petition, but did nothing in response to it.

Plaintiff always received the same response to his complaints, "get along" and if "you don't like it don't come to jail."  When Plaintiff complained after the assault and asked why he had not been moved, Defendant Carder stated, "we don't move people upon request."

Plaintiff alleges: "They knew that [I] was suffering mental[l]y they knew that the whole pod was suffering.  They knew that a fight/as[sa]ult would take place soon if somet[h]ing didn[']t happen.  They also knew that (only they) could prevent it from happe[n]ing.  We did every thing that is required for us as inmates to do to ask for help.  I feel that and claim that they personal[l]y left the situation as it was just to watch me get hurt."

## II.  Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a party may move for dismissal of "a claim for relief in any pleading" that fails to state a claim upon which relief can be granted.  Upon such motion, the Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[3]  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient;" rather, the pleading "must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4]  The Court does not "weigh potential evidence that the parties might present at trial," but assesses whether the complaint "alone is legally sufficient to state a claim for which relief may be granted."[5]  In determining whether a claim is facially plausible, the Court must draw

---

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Ridge at Red Hawk*, 493 F.3d at 1177 (emphases in original).

[5] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted).

on its judicial experience and common sense.[6] All well-pleaded facts are assumed to be true and are construed in the light most favorable to the non-moving party.[7] "Although plaintiff need not allege every element of [its] action in specific detail, [it] cannot rely on conclusory allegations."[8]

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[9] Thus, while the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf," it will, if it can, "reasonably read the pleadings to state a valid claim" even in the absence of citation to proper legal authority, confusion as to various legal theories, poor syntax or sentence construction, or unfamiliarity with pleading requirements.[10]

### III. Analysis

Defendants argue (1) the doctrine of qualified immunity bars Plaintiff's claims against Defendants, and thus, Plaintiff has failed to state a claim upon which relief may be granted, and (2) Plaintiff's claim for prospective injunctive relief should be dismissed given his transfer out of the Reno County Jail.

**A.  Qualified immunity**

The Court employs a two-part test in analyzing claims of qualified immunity. To defeat a claim of qualified immunity, the plaintiff must show that (1) "the defendant violated a constitutional or statutory right," and (2) "the violated right was 'clearly established at the time of

---

[6] *Iqbal*, 556 U.S. at 679.

[7] *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014).

[8] *See Hall v. Bellmon*, 935 F.2d 1106, 1113 (10th Cir. 1991) (internal citations omitted).

[9] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quotation and alteration omitted).

[10] *Id*. (quotations omitted).

the alleged unlawful activity.' "[11]  Here, Defendants concede that the right allegedly violated was clearly established,[12] and instead argue that Plaintiff's allegations "are insufficient to establish a plausible claim as to any of the individual Defendants."  Thus, the Court limits its analysis to whether Plaintiff has adequately pleaded facts sufficient to find that any of the Defendants violated his constitutional rights.

Plaintiff purports to bring two types of deliberate indifference claims—failure to protect Plaintiff from assault by another inmate and failure to provide medical assistance after the assault.[13]  Because Plaintiff has wholly failed to state a claim as to a failure to provide medical assistance,[14] the Court focuses its analysis on Plaintiff's failure to protect claim.

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including 'reasonable measures to guarantee the safety of the inmates.' "[15]  It has been long-recognized that "prison officials have a

---

[11] *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018) (quoting *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016)).

[12] Defendants state: "[t]he initial prong related to qualified immunity is met here, in that it is well established that the Eight [sic] Amendment imposes duties on government officials to take reasonable measures to guarantee the safety of inmates."

[13] Plaintiff's Amended Complaint also generally asserts that his claims implicate his due process and equal protection rights, but has failed to adequately plead a due process or equal protection claim separate from failure to protect claim.

[14] Plaintiff's Amended Complaint dedicates little more than a sentence to his allegation that Defendants failed to provide him medical assistance and does not identify which Defendants, if any, were involved in the alleged failure. As this claim is wholly conclusory and consists of only general allegations against unnamed individuals, it is dismissed for failure to state a claim.  *See Gray v. Sorrels*, __ F. App'x __, 2018 WL 3654823, at *3 (10th Cir. 2018) (noting that allegation against a group of Defendants that they denied a plaintiff relief for his severe pain for 79 days was "too conclusory to establish personal participation on the part of any one of them").

[15] *Poore v. Glanz*, 724 F. App'x 635, 639 (10th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

duty to protect prisoners from violence at the hands of other prisoners."[16] It does not follow, however, that every injury suffered at the hands of another inmate results in constitutional liability for prison officials.[17] Rather, to hold a prison official liable for failing to prevent such harm, Plaintiff must show (1) that he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) Defendants acted with a "sufficiently culpable state of mind."[18] "The prison official's state of mind is measured by a subjective, rather than an objective, standard. . . . In other words, the official must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' "[19] "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation."[20]

Defendants argue that Plaintiff has failed to allege that "Defendants were informed of or were otherwise aware that the Plaintiff was at substantial risk of serious harm," but instead has only alleged that he "filed requests to be moved because he perceived he was in danger." Defendant notes that Plaintiff has not alleged the existence of prior altercations involving him and his assailant, and that the prior occurrences described by Plaintiff are relatively minor. Defendants also critique Plaintiff's Amended Complaint for not alleging that Defendants failed to inquire or

---

[16] *Farmer*, 511 U.S. at 834 (alteration and quotation omitted).

[17] *Id*.

[18] *Id*.

[19] *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quoting *Farmer*, 511 U.S. at 837).

[20] *Poore*, 724 F. App'x at 639 (quotation marks and quotation omitted).

otherwise investigate the issue. Finally, Defendants argue that Plaintiff did not plead facts sufficient to demonstrate that any Defendant acted with deliberate indifference.

   1.   *Defendants Carder, Mondragon, and Swonger*

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements are not sufficient to state a claim for relief."[21] Plaintiff's allegations as to Defendants Carder,[22] Mondragon, and Swonger asserts:

> Each and every Defendant named, Sgt Carder, Dept Mondragon, Dept Conrad, Deputy Swonger. All had been forwarnd [sic] numerous times that I needed help and that I was in danger of being fisacly [sic] harmed. Many requests, and grievances were filed on this complaint. Each Defendant refused to help me on this situation.

This conclusory allegation does not adequately state a claim for failure to protect. Plaintiff does not identify when he submitted his requests and/or grievances to these Defendants, what the content of those requests and/or grievances included, how he was allegedly in danger of physical harm, or any other allegation relating to Defendants Carder, Mondragon, and Swonger's knowledge of a substantial risk of harm prior to Plaintiff's attack. Without having knowledge of a substantial risk of harm, Defendants cannot have acted with deliberate indifference to that risk of harm.[23] Without pleading facts to suggest that Defendants had knowledge of a substantial risk of harm, Plaintiff has failed to state a claim against Defendants Carder, Mondragon, and Swonger.

---

[21] *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (quotation marks and quotation omitted).

[22] Plaintiff also recounts a conversation with Defendant Carder that occurred after the assault. That conversation does not show knowledge of any complaints prior to the assault, and thus, cannot establish pre-assault knowledge of a risk of harm.

[23] Further, many of Plaintiff's complaints regarding Salabedra would not give rise to an inference that a substantial risk of harm existed. For example, Plaintiff alleges that Salabedra "was very disrespectful," treated Plaintiff like a child, and stole from Plaintiff and other inmates. If Plaintiff's complaints to Defendants included only these complaints or other similar complaints, those would not rise to the level necessary to satisfy the subjective component of the failure to protect claim. Thus, without providing any detail as to the content of Plaintiff's complaints

Likewise, to the extent Plaintiff generally alleges that the "Defendants" violated his rights, that "they" knew he was suffering mentally and that a fight would take place if they did not act, and that Plaintiff was placed back in the pod with Salabedra after the assault, these allegations fail to implicate the specifically named Defendants and are insufficient to state a claim.[24] The allegations against Defendants Carder, Mondragon, and Swonger simply do not state a claim to relief that is plausible on its face.[25] Accordingly, the Court dismisses Plaintiff's claims against Defendants Carder, Mondragon, and Swonger.

2.   *Defendant Conrad*

Unlike the other Defendants in this lawsuit, Plaintiff specifically alleges when Defendant Conrad received notice of the alleged threat to Plaintiff and the contents of the notice provided to Conrad. Plaintiff alleges that all of the inmates in his pod drafted and signed a petition that detailed what had been going on, asked Salabedra to be removed from the pod, and warned that if Salabedra was not moved, a fight would surely take place the next day. Although Plaintiff does not attach a copy of the petition, he states that it included all of the details of Salabedra's actions relating to Plaintiff, which would have included that Salabedra threatened to fight others and threatened to

---

to Defendants Carder, Mondragon, and Swonger prior to the assault, Plaintiff has failed to adequately plead his cause of action against these Defendants.

[24] *See Vega v. Davis*, 572 F. App'x 611, 616 (10th Cir. 2014) ("The complaint must make clear exactly *who* is alleged to have done *what* to *whom*, as distinguished from collective allegations. It is therefore incumbent upon a plaintiff to identify specific actions taken by particular defendants in order to make out a viable § 1983 or *Bivens* claim.") (quotation marks, alterations, and quotations omitted) (emphases in original).

[25] To the extent Plaintiff alleges that proof for his claims exists on the Turnkey corrections jail log, Plaintiff has failed to include copies of his requests and has failed to describe the contents of those requests or who received the requests. While Plaintiff alleges that he has not been able to obtain copies of his requests/complaints, that does not excuse Plaintiff from sufficiently pleading the details of his complaints.

"place his hands on" Plaintiff if Plaintiff woke Salabedra in the night to go to the bathroom. Further, Plaintiff represents that Defendant Conrad read the petition and "refused to help."

The Tenth Circuit recently reversed a district court's dismissal of a plaintiff's Eighth Amendment failure to protect claim based on similar allegations.[26] There, the plaintiff alleged that (1) he was worried that certain inmates would retaliate against him for his prior actions so he spoke with his unit team manager Newkirk and shared "his concern that something might happen to him" and requested to be transferred, but Newkirk told him a transfer may take a couple of weeks and did nothing to protect the plaintiff, (2) he spoke with his mental health provider about his fears the month before the first attack and his provider did nothing, and (3) a correctional officer knew a fight was about to occur and prevented another officer from doing anything because he wanted to see a fight. The Tenth Circuit held that these allegations were sufficient to survive a motion to dismiss as to defendants Newkirk, the mental health provider, and the correctional officer that "wanted to see a fight."

The allegations here are similar to those levied against the unit team manager and mental health provider in *Requena*. Plaintiff alleges that he informed Defendant Conrad of Salabedra's threatening behavior and asked that Salabedra be removed, that Defendant Conrad read the petition warning that a fight was imminent, and that Defendant Conrad refused to help. The following morning Salabedra assaulted Plaintiff causing him severe injuries. These allegations adequately state a claim for failure to protect against Defendant Conrad.

Defendants' arguments in favor of dismissal as to Defendant Conrad lack merit. Defendants' suggestion that Plaintiff must have alleged prior altercations with Salabedra to support

---

[26] *See Requena v. Roberts*, 893 F.3d 1195, 1213-14 (10th Cir. 2018).

his claim has been previously rejected by the Tenth Circuit.[27] While some of Plaintiff's complaints regarding Salabedra may appear "relatively minor," other complaints involved threats of violence and "prison officials have a duty to protect prisoners from violence at the hands of other prisoners."[28] Defendants' critique that Plaintiff did not allege that "Defendants failed to inquire or otherwise investigate the issue," requires the Court to draw inferences in favor of Defendants and conflicts with Plaintiff's representation that Defendant Conrad read the petition and refused to help Plaintiff.[29]

Plaintiff has adequately pleaded a cause of action for failure to protect as to Defendant Conrad. Accordingly, Defendants' Motion to Dismiss is denied as to Defendant Conrad.

**B.      Prospective injunctive relief**

Defendants argue that the Prison Litigation Reform Act bars Plaintiff's claims for prospective injunctive relief given Plaintiff's transfer out of the Reno County Jail. Plaintiff represents that he no longer resides in the Reno County Jail, but instead, resides at the Larned Correctional Mental Health Facility in Larned, Kansas (Doc. 66).

The Tenth Circuit has recognized that an inmate's transfer to a different facility may moot a request for prospective injunctive relief.[30] "Where the prisoner's claims for declaratory or

---

[27] *See Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980) (recognizing that a plaintiff "does not need to wait until he is actually assaulted before obtaining relief") (citation omitted). *See also Riddle*, 83 F.3d at 1205 ("It is true that one does not have to await the consummation of threatened injury to obtain preventive relief.") (citation omitted). While a defendant's knowledge of prior attacks by a specific inmate may bolster a plaintiff's failure to protect claim, such prior attacks and knowledge thereof is not a prerequisite for a failure to protect claim.

[28] *Farmer*, 511 U.S. at 833 (quotation marks, alteration, and quotation omitted).

[29] Although this representation appears in Plaintiff's response brief explaining why he filed suit against Defendant Conrad, as explained above, the Court may consider this allegation as it amplifies and is consistent with the other allegations in the Amended Complaint regarding Defendant Conrad.

[30] *See Jordan v. Sosa*, 654 F.3d 1012, 1027-28 (10th Cir. 2011); *Burnett v. Jones*, 454 F. App'x 655, 657 (10th Cir. 2011).

injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief."[31] "Consequently, courts have routinely dismissed such penitentiary-specific conditions-of-confinement claims as moot."[32] Courts have been disinclined, however, to find claims moot where the prisoner's lawsuit challenges policies applied "in a generally uniform fashion throughout a prison system."[33] In the latter situation, "courts have focused upon the fact that the prisoners had sued defendants who were actually situated to effectuate any prospective relief that the courts might see fit to grant."[34] Here, Plaintiff's claims assert "penitentiary-specific conditions-of-confinement" that do not implicate generally applied policies, but rather challenge individuals' actions. Accordingly, the Court dismisses, without prejudice, Plaintiff's claim for prospective injunctive relief.

## IV. Conclusion

Defendants' Motion to Dismiss is granted in part and denied in part. It is granted as to Defendants Carder, Mondragon, and Swonger, as Plaintiff has failed to allege a plausible cause of action as to these Defendants. Plaintiff's request for prospective injunctive relief is also dismissed in light of his transfer out of the Reno County Jail. Plaintiff, however, has adequately pleaded a

---

[31] *Jordan*, 654 F.3d at 1027.

[32] *Id*.

[33] *Id*. at 1028.

[34] *Id*.

cause of action against Defendant Conrad, and Defendants' Motion to Dismiss is denied as to Defendant Conrad.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum in Support (Doc. 62) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants Carder, Mondragon, and Swonger are dismissed.

**IT IS FURTHER ORDERED** that Plaintiff's claim for prospective injunctive relief is dismissed, without prejudice.

**IT IS SO ORDERED**.

Dated this 19th day of November, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE