# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MAURICE L. MILES, JR.

    *Plaintiff,*

 vs.

DEPUTY CONRAD, in his official capacity
with Reno County Sheriff's Department;
DEPUTY SWONGER, in his official
capacity with Reno County Sheriff's
Department; DEPUTY MONDRAGON, in
his official capacity with Reno County
Sheriff's Department; and DEPUTY
CARDER, in his official capacity with Reno
County Sheriff's Department;

    *Defendants.*

Case No. 16-3152-EFM

## MEMORANDUM AND ORDER

This case arises out of an assault that took place in the Reno County Jail. Plaintiff Maurice

Miles, Jr., alleges that Defendants violated his Eighth Amendment rights against cruel and unusual

punishment by failing to provide him protection from another inmate. Following Defendants'

Motion to Dismiss, Defendant Conrad is the sole remaining defendant in the case. He now seeks

summary judgment on the Eighth Amendment claim brought against him (Doc. 81). The Court

finds that Plaintiff cannot establish essential elements of his claim. Thus, Defendant's motion is

granted.

## I.    Factual and Procedural Background[1]

This case arose after another inmate at the Reno County Jail assaulted Plaintiff.  On or about April 30, 2016, Plaintiff was booked into and incarcerated at the Reno County Jail in Hutchinson, Kansas.  On May 25, 2016, Plaintiff was placed into the same cell with inmate Robert Sallabedra.[2]

Inmates at the Reno County Jail are directed to communicate concerns, requests, and related information to the Sheriff's Department through the "turnkey system."  The turnkey system electronically transmits inmate messages to Reno County jail personnel to be reviewed and addressed by the jail staff.

On May 29, 2016, Plaintiff submitted his first turnkey request related to his cellmate.  In this request, submitted at 5:03 a.m., he stated: "Please can I move cells? i keep catching my cellie digging through my stuff and its pissing me off."  Deputy Nall reviewed and denied the request on May 29 at 6:47 p.m.

At 6:08 p.m., on May 30, 2016, Plaintiff submitted a second turnkey request.  In it, he said: "I dnt know why yall do this to me. Is it a set up to fail?  I do not get along with my cellie at as a

---

[1] Defendant set forth facts in his Motion for Summary Judgment, and Plaintiff failed to appropriately or adequately controvert any of Defendant's facts.  Furthermore, Plaintiff set forth several additional facts in his response to Defendant's motion that did not comply with Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 standards.

[2] Plaintiff's cellmate has been referred to as both Sallabedra and Salabadra.  The Court will spell his name "Sallabedra" throughout this Order.

room mate theres plenty of other cells in this pod that are open.  Can you please move me?"  The next day, at 6:20 p.m., Deputy Conrad responded: "You will not be moved."

Five days later, on June 4, 2016, at 8:09 p.m., Plaintiff sent a message: "I just to make sure that I dont get into any truble for the stolen books that my cellie has been hording in our cell the next time you shake down."  Deputy Nall responded with "Noted."

On June 6, Plaintiff sent the following message about his cell mate: "People are talking about woopin my cellie for stealing and tering up the librarybooks an he keeps stealing coffee from people as well.  Something need to be done soon about it."  That same day, Deputy Wornkey replied with "noted."

On June 7, 2016, at 9:36 p.m., Plaintiff sent his fifth turnkey report about his cellmate: "Imasking that you please do something with my cellie, if he steals or disrespects me one more time Im gonna end up in the hole.  He constantly disrespects this whole pod.  Im not going to keep putting up with his stealing from me problem."  There was no response to this message.

On June 9, 2016, at 4:51 a.m., Plaintiff sent the following message: "Are yall realy serious? I mean we gave a nte t the gaurds last night with over 10 signatures on it to move salabedra out of this pod and yall still ignore us?  So what do we do now?  All go to the hole for handeling it our selvs?  Everybody is ready to woop this dudes ass if something dont happen. The stealing and disrespect has gone to far."

That same day, approximately 10 minutes later at 5:00 a.m., Plaintiff and Sallabedra were involved in a physical altercation (which is the subject of Plaintiff's claim in this case).  Deputy Conrad called for a code red over the radio immediately upon learning of the altercation.  Deputy Conrad and other personnel removed Plaintiff and Sallabedra from the pod and separated them to investigate the occurrence.  Plaintiff and Sallabedra were moved to separate pods and cells for

approximately seven weeks. They were placed in the same pod, but not the same cell, for approximately 12 days in late July and early August.

Plaintiff filed several different handwritten grievances during his imprisonment at the Reno County jail. The first one was filed on June 11, 2016.[3] On August 8, 2016, Plaintiff along with ten other inmates, filed a handwritten inmate grievance.[4] In this grievance, they asked for Sallabedra to be removed from the pod because he was disrespectful and stealing things. This grievance referenced the previous assault and asked that Sallabedra be moved as soon as possible. The inmate housing history report indicates that Sallabedra was moved from the pod on August 10 at 8:12 a.m.

Deputy Conrad provided an affidavit in which he avers that he did not directly receive any reports from Plaintiff or other inmates that Sallabedra had threatened Plaintiff with physical harm and was not aware of any such reports.

On July 13, 2016, Plaintiff, proceeding pro se, filed the current lawsuit against several individuals employed with the Reno County Sheriff's Department. The Court issued a notice of deficiency to Plaintiff, and Plaintiff submitted a new Complaint on July 29, 2016, which he supplemented on August 11, 2016. The case was dismissed for failure to exhaust administrative remedies, but it was reversed on appeal and subsequently reassigned to this Judge. After

---

[3] The Court does not have a copy of this handwritten grievance so its contents are unclear.

[4] This August 8 handwritten grievance is the only handwritten grievance in the record with Plaintiff's signature and additional inmates' signatures.

reassignment, Plaintiff filed an Amended Complaint, as well as a supplement to his Amended Complaint.

All Defendants filed a Motion to Dismiss. The Court granted in part and denied in part Defendants' motion. The only claim remaining asserts that Deputy Conrad violated Plaintiff's Eighth Amendment rights when he failed to protect Plaintiff from his cellmate, Sallabedra. Defendant Conrad now moves for summary judgment on this claim.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.[5] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[6] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[7] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[8] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[9] The Court views all evidence and reasonable

---

[5] Fed. R. Civ. P. 56(a).

[6] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[8] *Id.* (citing Fed. R. Civ. P. 56(e)).

[9] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

inferences in the light most favorable to the party opposing summary judgment.[10]  Finally,

although Plaintiff is pro se, and the Court must afford him some leniency in his filings,[11] he is still

expected to "follow the same rules of procedure that govern other litigants."[12]

### III.    Analysis

Plaintiff's only remaining claim is that Defendant Conrad violated Plaintiff's Eighth

Amendment rights when Defendant failed to protect Plaintiff from the June 9, 2016, assault from

his cellmate.  Defendant contends that Plaintiff does not have any evidence establishing a genuine

issue of material fact as to the elements of his claim.  Specifically, Defendant argues that Plaintiff

cannot identify any evidence establishing that he was incarcerated under conditions posing a

substantial risk of serious harm or that Deputy Conrad was deliberately indifferent to Plaintiff's

health and safety.

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on

prison officials to provide humane conditions of confinement, including 'reasonable measures to

guarantee the safety of the inmates.' "[13]  It has been long-recognized that "prison officials have a

duty to protect prisoners from violence at the hands of other prisoners."[14]  It does not follow,

however, that every injury suffered at the hands of another inmate results in constitutional liability

for prison officials.[15]  Rather, to hold a prison official liable for failing to prevent such harm,

---

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[11] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

[12] *Id*.

[13] *Poore v. Glanz*, 724 F. App'x 635, 639 (10th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

[14] *Farmer*, 511 U.S. at 833 (alteration and quotation omitted).

[15] *Id*. at 834.

Plaintiff must show (1) that he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) Defendant acted with a "sufficiently culpable state of mind."[16] A sufficiently culpable state of mind in a prison-condition case is that of " 'deliberate indifference' to inmate health or safety."[17]

"The prison official's state of mind is measured by a subjective, rather than an objective, standard. . . . In other words, the official must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' "[18] "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation."[19]

Defendant first contends that Plaintiff cannot identify evidence establishing that he was incarcerated under conditions posing a substantial risk of serious harm. The Court agrees. The evidence here simply demonstrates that Plaintiff communicated several times with prison staff that Plaintiff's cellmate was stealing from him and that they were not getting along. Plaintiff did not communicate concern that the conditions posed a substantial risk of serious harm. Thus, there is no issue of fact as to whether Plaintiff was incarcerated under conditions posing a substantial risk of harm.

---

[16] *Id.*; *see also Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (stating that "[t]o prevail on a failure to protect claim, an inmate must show (1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm.' ") (citation omitted).

[17] *Farmer*, 511 U.S. at 834 (citations omitted).

[18] *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quoting *Farmer*, 511 U.S. at 837).

[19] *Poore*, 724 F. App'x at 639 (quotation marks and quotation omitted).

More importantly, Plaintiff cannot establish that Defendant Conrad had subjective knowledge of the risk of serious harm. Defendant provides the Court with a copy of the turnkey reports. As noted above, the majority of these turnkey reports simply indicate that Plaintiff and his cellmate did not get along. *None* of the turnkey reports indicate aggressive or threatening behavior by Sallabreda *towards* Plaintiff. *None* of the turnkey reports indicate Plaintiff's concern of any violence *from* Sallabreda.

If anything, the last few turnkey communications indicate that Plaintiff may harm Sallabedra. The communication on June 7 is ambiguous in that Plaintiff states that if Sallabedra continues stealing from him, Plaintiff may end up in the hole. The last turnkey communication on June 9 states that Plaintiff may "woop his [cellmate's] ass." This communication, however, was sent approximately nine minutes before the altercation, and there is no indication that any prison official saw it prior to the altercation. In addition, as soon as prison officials got word that a fight was occurring, they immediately called a code red and separated the inmates.

Finally, Defendant submits evidence, by way of affidavit from Defendant Conrad, that he did not directly receive any reports from Plaintiff or other inmates that Sallabedra had threatened Plaintiff with physical harm. Defendant Conrad also avers that he was not aware of any such reports. Thus, Defendant could not have subjective knowledge of risk of harm to Plaintiff.[20]

---

[20] Plaintiff asserts in his response to Defendant's motion that on the night before the altercation, the entire pod signed a handwritten note asking for Sallabedra to be moved because Sallabedra was disrespectful. Plaintiff also contends that this note stated that Plaintiff was in danger. He states that another prisoner (Nelson) in the pod gave the note to Defendant and that Defendant stated that he would take a look at it. Plaintiff, however, does not provide any evidence to support these contentions. He does not provide the note. He does not provide an affidavit from any other individual that allegedly signed the note nor does he provide an affidavit from the person who allegedly gave the note to Defendant. Nor does he provide evidence that Defendant stated that he would look at note. At summary judgment stage, a plaintiff (even proceeding pro se) cannot simply rest on conclusory allegations but must instead provide the Court with specific facts with supporting evidence.

Several weeks after Defendant filed his motion for summary judgment and one week after Plaintiff filed his response to that motion, Plaintiff submitted several letters to the Court complaining that jail personnel refused to offer him assistance locating an inmate (Nelson). Plaintiff's complaint is well after discovery closed (October 30, 2018) as

To the extent that Plaintiff brings an official capacity claim,[21] this claim would also fail as a matter of law. "[A]n official capacity suit is 'only another way of pleading an action against an entity of which an officer is an agent.' "[22] An entity "may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff."[23] Generally, to impose liability upon a local governmental entity, a plaintiff must demonstrate that the actions were taken pursuant to an official policy or a custom.[24] Here, Plaintiff presents no evidence of a policy or a custom under which Defendant's actions were taken. Thus, he cannot establish an official capacity claim.[25]

---

well as after the dispositive motion deadline. The Court recognizes that Plaintiff is proceeding pro se, but Plaintiff must make an effort to prosecute his case within the deadlines set by the Court.

    Even if Plaintiff could establish the fact that he and other inmates gave a handwritten letter on June 8 about Sallabedra to Defendant Conrad, it would not change the analysis. Plaintiff's facts do not give rise to an inference that Conrad knew that Sallabedra had threatened Plaintiff resulting in a substantial risk of harm.

[21] Plaintiff's Amended Complaint does not specifically address in which capacity he sues Defendant, but Plaintiff states that Defendant Conrad acted under the color of state law. Thus, it appears that Plaintiff sues Defendant in his individual capacity. Plaintiff's original Complaint, however, stated that he was suing Defendants in their official capacities. In the pretrial conference, Plaintiff apparently asserted that he was suing Defendant in both capacities.

[22] *Johnson v. Bd. of Cty. Comm'rs*, 85 F.3d 489, 493 (10th Cir. 1996) (citing *Kentucky v. Graham*, 473 U.S.159, 165 (1985)).

[23] *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see also Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

[24] *Id.*

[25] Defendant also argues that Plaintiff cannot establish a punitive damages claim. To the extent Plaintiff asserts such a claim, he cannot establish one because he cannot establish an underlying claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 81) is **GRANTED**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 22nd day of May, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE